IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROLINE LECCESE and JOSEPH LECCESE**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY**<br>**Defendant.** | CIVIL ACTION<br><br><br><br>NO. 21-4488 |

## OPINION

This insurance coverage dispute between Plaintiffs Caroline and Joseph Leccese[1] and Defendant Allstate Property and Casualty Insurance Company ("Allstate") concerns whether Allstate must pay for damages to Plaintiffs' property caused by the police. Plaintiffs bring a breach of contract claim and, under 42 Pa. Cons. Stat. § 8371, a bad faith claim against Allstate. Allstate has moved for summary judgment Pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, summary judgment will be denied with respect to the breach of contract claim and granted with respect to the bad faith claim.

**I.    BACKGROUND**

Defendant Allstate, an insurance company, supplied Plaintiffs' homeowner's insurance (the "Policy"). On March 26, 2021, Joseph barricaded himself in the Pennsylvania home he shares with his wife, Caroline. Unable to enter her home, Caroline called the police who recommended emergency mental health intervention for Joseph. In her initial 911 call, Caroline informed police that Joseph had firearms. Police told Caroline to call the local crisis center to request that Joseph be committed for involuntary emergency examination and treatment under

---

[1] As Plaintiffs in this case are married to each other and share the same last name, they are referenced by their first names for ease of identification and clarity.

1

Section 302 of the Pennsylvania Mental Health Procedures Act. She did and the request was granted. Meanwhile, police officers were dispatched to the Lecceses' home. Although they tried to convince Joseph to exit the house, they could not. Further, they would not enter the property in attempt to extricate him. They advised Caroline to leave the property and stay in a motel. The next day they returned and for eight hours again attempted to convince Joseph to leave. Police knew at this point if not earlier that Caroline's 302 request had been granted. Police were also aware that Joseph was not permitted to possess a gun. They left messages on Plaintiffs' home phone telling Joseph to exit the house, yelled through a megaphone, and broke a window. The latter they did with Caroline's knowledge, but without her consent. After this attempt, police left and did not return for four days.

On April 1, the police informed Caroline that a Pennsylvania police SWAT team would, in a changed approach, enter the home. She objected and asked that they find another option: but officers refused. The SWAT team forced entry into the property and removed Joseph. When they arrived at the property, Caroline was out of state. In the process of removing Joseph, the SWAT team destroyed twelve windows and used tear gas, which ruined the carpeting, among other damage. Joseph was sent to a hospital for treatment. Subsequently he was charged with unlawful possession of firearms, but the charge was later withdrawn.

Plaintiffs filed a claim with Allstate to cover the damage. But, after investigating and consulting with legal counsel, Allstate denied coverage citing Joseph's actions and the Policy's criminal acts exclusion.

## II.   STANDARD OF REVIEW

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotations omitted); Fed. R. Civ. P.

56(c). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018) (internal quotations omitted). Courts must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations and alterations omitted).

Defendant insurance companies bear the burden to show that a claim made on a policy is ineligible for coverage. *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996).

### III.  DISCUSSION

#### A.  Breach of Contract

In Pennsylvania, insurance policy interpretation is a question of law. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006); *Scottsdale Ins. Co. v. City of Easton*, 379 F. App'x 139, 143 (3d Cir. 2010). The primary goal of interpreting an insurance policy is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citation omitted).

##### i.  *The Policy's Relevant Terms are Unambiguous*

When the terms of an insurance policy are "clear and unambiguous" they must be given effect and enforced. *Scottsdale Ins. Co.*, 379 F. App'x at 143 ("We will not . . . distort the meaning of the language or resort to a strained contrivance to find an ambiguity.") (citing *Madison Const. Co.*, 735 A.2d at 1060. Determining whether a term is ambiguous is a question of law for the Court to decide, *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991), giving the terms their "plain and ordinary meaning." *Id*. (citing *Pa. Mfrs. Ass'n Ins. Co. v. Aetna Casualty & Sur. Ins. Co.*, 233 A.2d 548, 551 (Pa. 1967).

A term is ambiguous only "if [it] is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Countryway Ins. Co. v. Slaugenhoup*, 360 F. App'x 348, 353 (3d Cir. 2010) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986) (internal citations removed). Generally, insurance policies should be read "to avoid ambiguities if possible" and the language should not be tortured to create them. *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981). A "mere disagreement between the parties over the meaning of a term is insufficient to establish that term as ambiguous[.]" *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 94 (3d Cir. 2001).

The coverage provided by the Policy is limited to "sudden and accidental direct physical loss to property." Defendant argues the operative terms "sudden" and "accidental" are unambiguous and, when applied to the facts here warrant dismissal of Plaintiffs' breach of contract claim. Plaintiffs disagree.

First, the terms "sudden" and "accidental" must be distinguished. The use of both words in insurance contracts "reveal[s] a clear intent to define the words differently, stating two separate requirements." *Transamerica Ins. Co. v. Thomas M. Durkin & Sons, Inc.*, 1991 WL 206765, at *10 (E.D. Pa. Oct. 1, 1991), *aff'd*, 983 F.2d 1052 (3d Cir. 1992) (internal quotations omitted). As such, the meaning of each term, and thus whether it is ambiguous or unambiguous, will be determined separately.

> Pennsylvania law counsels that an "accident"
>
> is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident.

*State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citing

4

*Brenneman v. St. Paul Fire & Marine Ins. Co.*, 192 A.2d 745, 747 (Pa. 1963)) (internal quotations omitted). Thus, in the context of insurance contracts, an "accident" is an unambiguous term. *See Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007) ("Accident has been defined in the context of insurance contracts as an event or happening without human agency or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens.") (internal quotations omitted).

The term "sudden" is also unambiguous in that the Pennsylvania Supreme Court has determined that in insurance contracts "[w] e do not believe that [it] is possible to define 'sudden' without reference to a temporal element that joins together conceptually the immediate and the unexpected." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1194 (Pa. 2001); *see also Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp.3d 672, 679 (E.D. Pa. 2018) (citing *Lower Paxton Twp. v. U.S. Fid. & Guar. Co.*, 557 A.2d 393, 402 (Pa. Super. 1989)) (finding that "sudden" "conveys a 'temporal meaning . . . *i.e.* abruptness or brevity.'"). Indeed, the Third Circuit has focused on the temporal definition of sudden in the context of nearly identical insurance contract language and found its meaning to be unambiguous. *N. Ins. Co. of New York v. Aardvark Assocs., Inc.*, 942 F.2d 189, 192-93 (3d Cir. 1991).

Accordingly, the terms "sudden" and "accidental" in the Policy are unambiguous.

    ii.   *Coverage under the Policy*

        a.  <u>Sudden</u>

Defendant surmises that the property damage in question is not sudden because police were present at Plaintiffs' home for multiple days and asked Joseph to exit the property multiple times. The Lecceses disagree, arguing that a question of material fact remains as to whether they expected the SWAT team to enter and damage the home, or alternatively expected the extent of

damage caused by the SWAT team.  As stated *supra*, the term sudden, in insurance contracts like the Policy, does not refer to years-long, drawn out instances of damage.  *See e.g., id.* at 195-96 (granting summary judgment because years–long damage from pollution was not sudden); *see also U.S. Fid. & Guar. Co. v. Korman Corp.*, 693 F. Supp. 253, 260 (E.D. Pa. 1988) (determining that damage over a continued, long period of time does not constitute sudden); *Hyde Athletic Indus., Inc. v. Cont'l Cas. Co.*, 969 F. Supp. 289, 299 (E.D. Pa. 1997) (finding that years–long pollution was not sudden, even if harmful chemicals were released quickly in once instance); *Lower Paxton Twp.*, 557 A.2d at 403-04 (refusing to designate damage as sudden when damage had been ongoing for nineteen months); *Techalloy Co. v. Reliance Ins. Co.*, 487 A.2d 820, 827 (Pa. Super. 1984) (finding pollution discharge over twenty-five years, where Plaintiffs were informed the pollution would occur, was not sudden).  Rather, sudden incidents occur over a shorter time period—what that time period is depends on the facts of the case. *Capriotti v. Allstate Prop. & Cas. Ins. Co.*, 2012 WL 3887043, at *3 (E.D. Pa. Sept. 6, 2012) (denying summary judgment motion because there was a genuine dispute of material fact on whether water damage to a property checked on a daily basis, even with a month-long gap between indications of damage, was sudden).

In this case, Allstate maintains the incident could not have been sudden because police remained outside Plaintiffs' home for hours over a number of days, with police at the property on one day for eight hours.  Yet, viewing the record in light most favorable to Plaintiff, the damage at issue in the instant case occurred on one singular day, April 1, not over a series of weeks, months, or years.  The damage, and the manner in which the damage was carried out, was an abrupt change from prior assurances that police would not enter the home at all.  Up until April 1, the only damage inflicted by the police was breaking one window, which they did

without Plaintiffs' consent, but with Caroline's knowledge.  The SWAT team's damage throughout the property occurred after four days without police presence and by a specialized police unit that had previously not been involved in the incident using rapidly escalated force on one single day:  these actions were taken over Caroline's objections and are categorically different than officers' previous efforts to convince Joseph to leave the house.  Given this, a reasonable jury could find that the incident was sudden.

### b.  Accidental

Neither is Allstate's argument that the damage to Plaintiffs' house was accidental convincing.  As the Pennsylvania Supreme Court has stated:

> [i]n our state, the ["accidental"] exclusionary clause applies only when the insured intends to cause a harm.  Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage.  The exclusion is inapplicable even if the insured should reasonably have foreseen the injury which his actions caused.

*Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 863 (Pa. 2004); *see also Utica First Ins. Co. v. Maclean*, 2009 WL 415988, at *6 (E.D. Pa. Feb. 19, 2009) ("An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result.").  Even when an insured is negligent in the harm or takes an "unreasonable risk of harm[,]" she does not necessarily intend the damage that in fact resulted. *Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, 140 F.3d 222, 224-25 (3d Cir. 1998).

Further, even when "alleged negligence may have led to the intentional acts of a third party" coverage may be required.  *See Baumhammers*, 938 A.2d at 292; *contra Gene's Rest., Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988).  And, damage caused and intended by police, does not necessarily preclude recovery from an insurer.  *Mohn v. Am. Cas. Co. of Reading*, 326 A.2d 346, 348 (Pa. 1974) (holding that the intentional and fatal police shooting of insured's son who was committing a burglary was accidental and insurance must cover parents).

Where a third party, not the insured, caused the damage as is the case here, the relevant inquiry: (1) views the incident from the perspective of the insured; and (2) determines whether the insured intended the injury, as opposed to whether the third party intended to inflict the damage. *Pipher*, 140 F.3d at 227.

As a preliminary matter, both Plaintiffs are jointly insured under the Policy. If either Plaintiff had intent to cause the damage and thus the damage was not accidental, neither can recover. *Travelers Home & Marine Ins. Co. v. Stahley*, 239 F. Supp.3d 866, 873 (E.D. Pa. 2017) (citing *McAllister v. Millville Mut. Ins. Co.*, 640 A.2d 1283, 1288 (Pa. Super. 1994)) ("If the language clearly establishes that the obligations of the insureds are joint, then the 'prohibited acts of one insured [will] bar all others from recovering.' "); *Robinson*, 306 F. Supp.3d at 680. Thus, to avoid coverage, Allstate may show that either Plaintiff had intent to cause the damage.

Defendant argues it owes no coverage for the damage because the harm was not an accident—it was a predictable result of Plaintiffs' actions. But, with respect to Caroline—she was out-of-state and not present at the home for the SWAT entry. Although she initially called for emergency support, she objected to the SWAT team's entry. Thus, she cannot be found to have intended the damage.

The evidence is, however, muddy as to Joseph's intent. Here, we know that Joseph intended to remain in his house—he had refused to come out. But it does not follow from that that he intended for the police to enter his home or damage his property. There is no evidence in the record that he had any inkling that the SWAT team was about to break its way in (indeed it would be reasonable to assume that he did not know given that several days before the police had spent hours trying to negotiate with him after which they had walked away and left him undisturbed by them in the house for days). Given that, a reasonable jury could find Joseph did

8

not possess the requisite intent to cause the damage to the property. *Wehrenberg v. Metro. Prop. & Cas. Ins. Co.*, 715 F. App'x 209, 212 (3d Cir. 2017); *see also Vale Vista Assocs., L.P. v. Cincinnati Cas. Co.*, 442 F. Supp.3d 896, 901 (W.D. Pa. 2020), *app. dismissed sub nom. Vale Vista Assocs. LP v. Cincinnati Cas. Co.*, 2020 WL 5652812 (3d Cir. June 24, 2020) (denying exempting coverage for an insured, who negotiated potential damage in lease which later occurred).[2]

c. Criminal Acts

Defendant next argues that even assuming the loss was not caused by Joseph's intentional acts, there is another independent reason as to why Plaintiff's claim for breach of the Policy should be denied—that is a Policy provision which excludes any loss resulting from: "criminal acts . . . of any **insured person**, if the loss that occurs . . . may be reasonably expected to result from such acts" (emphasis in original).[3] Defendant maintains that because Joseph unlawfully possessed firearms Plaintiffs cannot recover under the Policy.

Here, the police knew that Joseph possessed firearms—Caroline told them so in her initial 911 call. And, shortly thereafter on March 27 at the very latest on learning that Caroline's request to have her husband examined and treated under the Pennsylvania Mental Health Procedures Act had been granted, they knew that it was illegal for him to own them, as made

---

[2] In a footnote Allstate makes reference to *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.* in which the Third Circuit noted that "[i]n addition to the exclusions named in the policy itself, every all-risk contract of insurance contains an unnamed exclusion—the loss must be fortuitous in nature." 866 F.2d 71, 74-75 (3d Cir. 1989). Allstate, however, makes no argument as to why this exclusion would apply in this instance and, even if it did, an argument made in a footnote need not be considered by the court. "An issue is waived unless a party raises it in its opening brief, and for those purposes "a passing reference to an issue . . . will not suffice to bring that issue before this court." *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (ellipsis in original)), *cert. denied*, 513 U.S. 946 (1994). A "passing reference" includes one that is made in a footnote. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

[3] The exclusion applies regardless of whether or not the insured person is actually charged with, or convicted of, a crime.

clear in the arrest warrant and general offense report, since individuals subjected to involuntary emergency examination and treatment under Section 302 of the Pennsylvania Mental Health Procedures Act are temporarily prevented from possessing a firearm.  50 Pa. Code § 302 (1976); *Doe I v. Evanchick*, 355 F. Supp.3d 197, 223 (E.D. Pa. 2019), *aff'd sub nom. Doe I v. Governor of Pennsylvania*, 977 F.3d 270 (3d Cir. 2020).

Given that the police did not enter the property for six days after it was evident that Joseph was in illegal possession of weaponry, a reasonable jury could find that the SWAT team entered Plaintiffs' property and caused damage not because Joseph possessed a firearm, but rather because he refused to leave the house.  Unlike other instances where criminal act exemptions were found to preclude recovery because of direct links between the criminal act and the harm, reasonable jurors may disagree here as to the causal connection between the criminal gun possession charge and the SWAT team's damage.  *See, e.g. Greenfield*, 855 A.2d at 864-65 (precluding recovery by insured under criminal acts exclusion because insured voluntarily participated in the criminal sale of heroin resulting in a death from heroin overdose); *Allstate Ins. Co. v. Hopfer*, 672 F. Supp.2d 682, 689-91 (E.D. Pa. 2009) (excluding from coverage, under a criminal acts exemption, an insured registered nurse who pled guilty to criminally administering recreational drugs in multiple doses, despite adverse reactions, resulting in a death).  As such, a genuine dispute of material fact remains on this point.

For the reasons set forth above, summary judgment cannot be granted on Plaintiffs' breach of contract claim.

### B. Bad Faith

Defendant also requested summary judgement on Plaintiffs' bad faith claim which is premised on Allstate's investigative practices generally and the investigation actually performed

in this matter.[4]

If an insurer has acted in bad faith with respect to a claim made by an insured Pennsylvania's bad faith statute provides that the insured may obtain from the insurer punitive damages, interest on damages, as well as court costs and attorney fees. 42 Pa. Cons. Stat. § 8371. To sustain a bad faith claim, "plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000); *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). The first prong is an "objective inquiry" determining "whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented." *Id.* The second requires proof that the insurer's denial was more than "mere negligence or bad judgment[.]" *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (quoting *Black's Law Dictionary* 139 (6th ed. 1990)).

Bad faith may flow from an insurer's investigation of a claim. *Kunji Harrisburg, LLC v. Axis Surplus Ins. Co.*, 447 F. Supp.3d 303, 309 (E.D. Pa. 2020). But, even if a coverage denial is ultimately determined to be meritless "bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp.2d 580, 587 (E.D. Pa. 1999). Indeed, for an investigation to be deemed reasonable, an insurer "need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with

---

[4] Defendant's argument that its decision to deny coverage was appropriate and that, accordingly, the bad faith claim must be dismissed, *see e.g., Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.*, 899 F. Supp. 1385, 1397 (E.D. Pa. 1995), *aff'd sub nom. Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.*, 91 F.3d 13 (3d Cir. 1996), is not viable given the survival of Plaintiff's breach of contract claim.

its conclusion. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Mann v. UNUM Life Ins. Co. of Am.*, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003).

Here, Allstate began its investigation soon after the loss, sent communications to the insured within four days of the damage, interviewed Caroline, referred the matter to legal counsel and, after receiving legal counsel's opinion, issued a denial under the intentional and criminal acts provisions of the Policy. While Plaintiffs would have had Allstate hire an appraiser or a private investigator, obtain additional witness statements, speak with the Pennsylvania State Police, obtain medical information about Joseph, investigate the status of his criminal charges and seek affidavits from unspecified individuals in this situation, Allstate's failure to do so does not amount to bad faith. So long as an insurer adopts a reasonable construction of the policy and uses that construction to investigate the claim and to inform its coverage decision there will, generally, be no bad faith. *See McCrink v. Peoples Benefit Life Ins. Co.*, 2005 WL 730688, at *11 (E.D. Pa. Mar. 29, 2005). Here, Allstate's use of legal counsel to comment on the claim denial underscores the reasonability of the investigation, even if the result of its analysis is eventually determined to be flawed. *Tony Tung Thien Nguyen v. Allstate Ins. Co.*, 2020 WL 762371, at *5 (E.D. Pa. Feb. 14, 2020) (denying bad faith claim when insurer defendant Allstate relied on independent legal counsel's conclusion, in addition to reports of a structural engineer, stating the investigation was not "frivolous or unfounded"). Thus, Allstate's investigation here was objectively reasonable and there is no reason to address the second prong of the bad faith inquiry in order to conclude that summary judgment shall be granted on this claim.[5]

---

[5] Plaintiffs complain more broadly that Defendant's investigative practices are generally deficient. Specifically, they maintain that Defendant has no protocol for training its adjustors other than online courses, that it has no memoranda describing the steps to be taken by its claim's examiners, that it has no handbook for the processing of claims, and that it does not put its personnel through training on the legal concepts of causation or foreseeability,

## IV.  CONCLUSION

In light of the foregoing, summary judgment shall be denied as to the breach of contract claim in favor of Plaintiffs but granted as to the bad faith claim in favor of Defendant.

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

**WENDY BEETLESTONE, J.**

---

other than those training materials provided in its internal Learning Resource Network.  But, bad faith claims must generally be specific to plaintiffs claim for recovery.  *Perichak v. Int'l Union of Elec. Radio & Mach. Workers, Loc*. 715 F.2d 78, 85-86 (3d Cir. 1983) (rejecting "conclusory" bad faith claim when arguments did not reveal anything "improper or wrong" specific to plaintiff); *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp.2d 591, 600 (E.D. Pa. 2010) (rejecting "'bare-bones' conclusory allegations which do not state a plausible bad faith claim").  As such, Plaintiff's arguments as to Allstate's general investigative practices do not save its bad faith claim.